UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEIA TOUSIS, as Special Administrator of the Estate of GUS TOUSIS, </br></br>Plaintiff,</br></br>v.</br></br>SPECIAL AGENT KEITH BILLIOT,</br></br>Defendant. | No. 20 C 3012</br></br>Judge Coleman |

**MEMORANDUM IN SUPPORT OF**
**SPECIAL AGENT BILLIOT'S MOTION FOR SUMMARY JUDGMENT**

**Introduction**

Gus Tousis drove his SUV over 114 miles per hour through traffic in an effort to evade law enforcement after federal agents observed him engaging in an illegal drug transaction. The agents caught up to Tousis, and Drug Enforcement Administration Special Agent Keith Billiot used his vehicle to block Tousis's path. As Tousis reversed, Special Agent Billiot ran toward him, commanding him to stop and to exit the SUV. Instead of complying, Tousis shifted his SUV back into drive and then accelerated toward Billiot, who fired his rifle at Tousis. The SUV struck Billiot, flinging him to the curb, and the bullet passed through the SUV's front windshield and shattered on the steering wheel. A piece of the bullet struck Tousis in the front of his neck, killing him.

Tousis's estate is now suing Special Agent Billiot under the theory that the agent, not Tousis, is the person who did something wrong. The allegation is that Billiot's use of force was excessive. But because the evidence shows that the use of force was reasonable under the circumstances, and because the doctrine of qualified immunity protects Billiot from suit, Billiot is entitled to summary judgment.

**Background**

As part of a drug trafficking investigation, DEA agents placed a court-authorized tracker on Gus Tousis's SUV and observed him engaging in what they suspected was a drug transaction in Aurora, Illinois, on June 2, 2018. DSOF ¶¶ 12-19. After Tousis drove away from the transaction, the agents enlisted a DuPage County sheriff's officer to conduct a traffic stop. DSOF ¶ 20. Instead of pulling over, Tousis sped away from the deputy at speeds over 114 miles per hour as he fled eastbound. DSOF ¶¶ 20-22. The deputy did not pursue Tousis, but DEA Special Agent Keith Billiot caught up with Tousis in Chicago, as Tousis exited the Eisenhower Expressway (I-290) onto southbound Central Avenue. DSOF ¶¶ 26-27.

Tousis drove south on Central, turned west on Roosevelt Road, and then turned north into a parking lot area before getting back onto Central, this time heading northbound. DSOF ¶¶ 27-31. Certain that Tousis was aware he was being followed, Billiot attempted to stop Tousis by pulling his vehicle (with lights flashing and siren blaring) in front of Tousis's as it approached a red light on northbound Central. DSOF ¶¶ 32-38.

After Billiot had pulled his vehicle in front of Tousis's, Tousis shifted his SUV into reverse and began backing up. DSOF ¶ 41. Special Agent Billiot ran toward Tousis with his rifle, yelled, "Police," and commanded Tousis to stop and to get out of the SUV. DSOF ¶ 44-45.

Instead of complying, Tousis shifted his SUV into drive and accelerated toward Billiot. DSOF ¶¶ 45-48. Billiot had no time or ability to get out of the way. DSOF ¶ 49. The SUV struck Billiot in the chest-to-waist area, and Billiot was thrown to the ground, landing on the curb of the concrete median and injuring his back. DSOF ¶¶ 50, 52. But in the instant before being struck by the SUV, or possibly precisely as he was struck, Billiot discharged his rifle in an effort to protect himself. DSOF ¶ 53. The bullet passed through the front windshield of Tousis's SUV and

shattered on the steering wheel. DSOF ¶ 56. A piece of the bullet struck Tousis in the front of his neck, and Tousis died (despite efforts by Billiot and the other agents to save him). DSOF ¶¶ 56, 61-63, 65-66.

Tousis's estate filed this lawsuit in 2020. Dkt. 1. The complaint alleges that Special Agent Billiot violated Tousis's Fourth Amendment right to be free from excessive force, invoking *Bivens v. Six Unknown Fed'l Narcotics Agents*, 403 U.S. 388 (1971) (authorizing individual-capacity lawsuit against federal officers for constitutional violations). DSOF ¶ 1.

## Argument

Special Agent Billiot is entitled to summary judgment because the evidence shows that his use of force was not excessive and did not violate Tousis's clearly established rights. Even deadly force is not excessive when an officer has probable cause to believe that a suspect poses a significant threat of death or serious physical injury to the officer or others. Here, Billiot had probable cause to believe as much because Tousis had just fled from the police, driving dangerously at over 114 miles an hour, and rather than submit to arrest when confronted for a second time by a law enforcement vehicle with lights flashing and siren blaring, Tousis began driving his SUV in reverse before shifting back into drive and accelerating *toward* the agent who was approaching the front of the SUV on foot and commanding him to stop. For this reason, Billiot did not violate Tousis's clearly established Fourth Amendment rights when he fired through Tousis's front windshield. Moreover, the doctrine of qualified immunity protects Special Agent Billiot from suit because he reasonably believed that his conduct was lawful.

**I.      No Excessive Force**

The evidence shows that Special Agent Billiot's use of force against Gus Tousis was not excessive, even when viewing the evidence in the light most favorable to plaintiff and drawing

reasonable inferences in plaintiff's favor, as the court must do at the summary judgment stage. *Ybarra v. City of Chicago*, 946 F.3d 975, 978 (7th Cir. 2020). A court assesses the reasonableness of the use of force by looking at the totality of the circumstances, including: (1) the seriousness of the crime at issue; (2) whether the suspect posed a threat; and (3) whether the suspect was resisting or fleeing arrest. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015). Here, all three factors weigh in Billiot's favor. First, the crime of fleeing an attempted arrest at over 114 miles per hour was undeniably serious. DSOF ¶¶ 20-22; *Plumhoff v. Rickard*, 572 U.S. 765, 776 (2014) (fleeing police at over 100 miles per hour was "outrageously reckless" and "posed a grave public safety risk"). Second, Tousis unquestionably posed a threat (indeed, a potentially *fatal* threat): he shifted his SUV out of reverse and into drive to avoid imminent arrest and drove directly at Billiot, who was on foot. DSOF ¶¶ 38-49; *Scott v. Edinburg*, 346 F.3d 752, 757 (7th Cir. 2003) ("an automobile may be used as a deadly weapon"). And third, Tousis was resisting or fleeing arrest: a vehicle with lights flashing and siren blaring had blocked his path, and a clearly identified agent had commanded him to stop and get out of his SUV, but rather than comply he drove his SUV at the agent. DSOF ¶¶ 38-49. All three factors weigh in favor of a finding that the use of force here was justified.

To the extent that the analysis is any different when *deadly* force is used, as it was here, the evidence still shows that Special Agent Billiot's use of deadly force was reasonable. When an officer reasonably believes that a suspect's actions place "him, his partner, or those in the immediate vicinity in imminent danger of death or serious bodily injury, the officer can reasonably exercise the use of deadly force." *Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir. 1988) (emphasis omitted). Here, Billiot reasonably believed that Tousis's actions placed him in imminent danger

of death or serious injury when Tousis drove his SUV at him, DSOF ¶¶ 48-49, and so the use of deadly force was accordingly justified.

Indeed, even if Billiot himself had *not* been personally in danger, his use of deadly force would still have been justified. An officer may use deadly force if he has probable cause to believe that the suspect poses a threat to *others*. *Ybarra v. City of Chicago*, 946 F.3d 975, 978 (7th Cir. 2020). And Tousis had already demonstrated a willingness to place many others at great risk by driving at ridiculously dangerous speeds to avoid arrest. *Plumhoff v. Rickard*, 572 U.S. 765, 776-77 (2014) ("all that a reasonable officer could have concluded was that [plaintiff] was intent on resuming his flight and that, if he were allowed to do so, he would once again pose a deadly threat for others on the road"). Special Agent Billiot would have been justified in firing to prevent Tousis from escaping even if the SUV had not been aimed at him personally when Tousis began driving forward. *Ybarra*, 946 F.3d at 980 (officers "acted reasonably in using deadly force" to "protect others in the immediate vicinity" where offender had already fled police at dangerous speeds).

To prevail on this excessive force claim, Tousis's estate would have to prove that it was objectively unreasonable for Billiot to shoot Tousis under the circumstances that existed at the time. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Horton v. Pobjecky*, 883 F.3d 941, 949 (7th Cir. 2018) (plaintiff must show that the officer's use of force was "objectively excessive from the perspective of a reasonable officer on the scene under the totality of the circumstances") (citing *Graham*, 490 U.S. at 396-97). The estate cannot do so. As explained, a law enforcement officer is authorized to use deadly force against a suspect who is in the process of escaping if the officer has "probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v Garner*, 471 U.S. 1, 3 (1985). Special Agent Billiot unquestionably had probable cause to believe that Tousis posed a significant threat of death or

5

serious physical injury when Tousis drove his SUV at him. Indeed, just a few years earlier, a Chicago-area DEA agent named Anthony Anglada was seriously injured when a drug suspect drove over him while trying to evade arrest. DSOF ¶ 72 (Anglada "was actually struck by a several ton motor vehicle and run over[,] tire marks on his arm. The back of his head looks like it went through a meat grinder.").

The estate may try to argue that Tousis was unarmed and was nondangerous. *Garner*, 471 U.S. at 11 ("A police officer may not seize an unarmed, nondangerous suspect by shooting him dead."). But Tousis *was* armed. He was armed with the SUV that he used to strike Special Agent Billiot (and endanger countless others). DSOF ¶¶ 46-52; *Scott v. Edinburg*, 346 F.3d 752, 757 (7th Cir. 2003) ("an automobile may be used as a deadly weapon"). Tousis was also dangerous. He had just fled police at over 114 miles per hour, and he was attempting to flee again. DSOF ¶¶ 20-22, 28-32, 35-50; *Plumhoff v. Rickard*, 572 U.S. 765, 776 (2014) (fleeing police at over 100 miles per hour was "outrageously reckless" and "posed a grave public safety risk").

The estate might also try to argue that Tousis was complying, or attempting to comply, with Special Agent Billiot's instructions. *Gant v. Hartman*, 924 F.3d 445, 451 (7th Cir. 2019) ("it is unreasonable to use deadly force against a suspect who is not resisting arrest and who is genuinely attempting to surrender"). But there is no evidence that Tousis was attempting to surrender. To the contrary, the only evidence is that Tousis was attempting *not* to surrender: rather than stop his SUV and get out as he was told, Tousis drove his SUV directly at Billiot. DSOF ¶ 40, 45-49. (Perhaps Tousis acted as he did because that he knew he faced a long prison term if he were caught with the half-pound of cocaine he was transporting. DSOF ¶ 68 (noting that police recovered 301 grams of cocaine from Tousis's SUV); 720 ILCS 570/401(a)(2)(B) (possession of

6

100-399 grams of cocaine with intent to deliver is non-probation-eligible "Class X" felony with sentencing range of 9 to 40 years).)

The estate may also try to point to some uncertainties in the factual record and argue that a jury is needed to resolve those questions. For example, Billiot testified at his 2021 deposition that he got out of his vehicle only *after* Tousis began driving in reverse, whereas the 2018 report generated by the Chicago Police Department reflects that Billiot got out of his vehicle *before* Tousis started driving in reverse. DSOF ¶ 41. But this small discrepancy is not a *material* question of fact that could preclude summary judgment. Fed. R. Civ. P. 56(a). Whichever of those two events happened first, they resulted in a situation in which Billiot was standing in front of Tousis's SUV ordering Tousis to stop and get out, an order to which Tousis responded by driving his SUV forward toward Special Agent Billiot. DSOF ¶¶ 38-40, 42-49.

Similarly, the estate might point to the fact that a person named Shaun Haymond, who lived under an overpass near where the incident took place, told police on the day after the shooting that he did not see Tousis's SUV move in reverse, that he did not think the SUV actually struck Billiot, and that he was "unsure" whether Billiot fired his weapon before or after falling to the ground. DSOF ¶¶ 69-70. Haymond's lack of certainty about when the shot occurred can be disregarded because we know that the bullet went through Tousis's front windshield, DSOF ¶ 56, so it is not possible that Billiot fired after falling to the ground. But even if the rest of Haymond's report were to be credited, there would still be no material question of fact that could preclude summary judgment. Even if the Tousis did *not* drive his SUV in reverse before driving forward (as Haymond apparently told police), the undisputed evidence is that he *drove his SUV toward Billiot* while Billiot was standing on foot commanding him to submit to arrest. DSOF ¶ 45-49. And even if the SUV did *not* ultimately strike Billiot (as Haymond apparently told police), the

7

undisputed evidence is that Billiot *thought he was about to be hit* and fired his rifle in an effort to protect himself. DSOF ¶¶ 49, 54. Indeed, Haymond's account lines up with the other evidence in all material respects: Haymond told police that the officer positioned himself in front of the vehicle, that the vehicle began moving in the direction of the officer, that he heard a gunshot, and that the officer fell to the ground. DSOF ¶ 69.

The estate might also point to the lack of evidence in the record regarding how fast Tousis's SUV was moving when Tousis drove toward Billiot. But Billiot's undisputed testimony is that he had no time to get out of the way. DSOF ¶ 49. And "even a van traveling at only 10 mph moves approximately 15 feet every second, which is significant when a van that has been driven erratically is moving in close proximity to others." *Monzon v. City of Murrieta*, 966 F.3d 946, 956 (9th Cir. 2020) (affirming summary judgment where officer used deadly force to protect himself and other officers "whose lives were threatened by the accelerating van").

Finally, the estate might argue that, even though Billiot testified that he had no time to get out of the way, he should have at least *tried* to do so rather than firing his rifle. But in analyzing the reasonableness of an officer's use of force, among the circumstances that "must" be considered are "the pressures of time and duress, and the need to make split-second decisions under intense, dangerous, uncertain, and rapidly changing circumstances." *Horton*, 883 F.3d at 950. A court must "allow for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014) (quotation and alteration omitted). There can be no genuine question that Billiot had almost no time to decide how to react when Tousis's SUV started coming toward him. *Thomas v. Durastanti*, 607 F.3d 655, 665 (10th Cir. 2010) ("it goes without saying that an officer in close quarters is no match for

8

a two-ton vehicle"). Again, Billiot's undisputed testimony is that he had no time to get out of the way. DSOF ¶ 49. But he would be entitled to summary judgment even if some other means of stopping a suspected drug offender who had fled police at over 114 miles per hour and who was now driving his SUV toward an arresting officer might have existed. The reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *City of Los Angeles v. Mendez*, 137 S.Ct. 1539, 1546 (2017) (quotation omitted).

At the end of the day, summary judgment is appropriate if there is "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). There is no genuine dispute over any material fact here. Special Agent Billot is entitled to summary judgment.

## II.     Qualified Immunity

Special Agent Billiot is also entitled to summary judgment under the doctrine of qualified immunity. The doctrine of qualified immunity protects federal officers from suit if their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (quotation omitted). In determining whether an officer is entitled to qualified immunity, the court asks: (1) whether the officer violated a statutory or constitutional right; and (2) whether the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). The court has discretion to choose which prong to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### A.     No Violation

The first reason that Special Agent Billiot is entitled to qualified immunity is that the evidence shows that he did not violate Tousis's Fourth Amendment right to be free from excessive

9

force. As explained in Section I above, a law enforcement officer is authorized to use deadly force against a suspect who is in the process of escaping if the officer has "probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 3 (1985); *Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir. 1988) (officer may use deadly force when he reasonably believes that suspect's actions place "him, his partner, or those in the immediate vicinity in imminent danger of death or serious bodily injury"). Again, Tousis indisputably posed a potentially fatal threat to Billiot: after having fled police once, instead of complying when a clearly identified officer commanded him to stop and get out of his SUV, he drove his SUV directly at the agent. DSOF ¶¶ 20-22, 40, 45-49; *Scott v. Edinburg*, 346 F.3d 752, 757 (7th Cir. 2003) ("an automobile may be used as a deadly weapon"). Because Billiot did not violate Tousis's Fourth Amendment rights, he is entitled to qualified immunity.

### B. No Clearly Established Right

The second reason that Special Agent Billiot is entitled to qualified immunity is that he did not violate any *clearly established* right. Qualified immunity applies when an officer's conduct does not violate "clearly established" rights "of which a reasonable person would have known." *Rivas Villegas v. Cortesluna*, 142 S.Ct. 4, 7 (2021) (quotation omitted). To be clearly established, the right allegedly violated must be established not as a "broad general proposition," but in a "particularized" sense, so that the right's "contours" are clear to a reasonable official. *Reichle v. Howards*, 566 U.S. 658, 664 (2012). The contours must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right," and existing precedent "must have placed the statutory or constitutional question beyond debate." *Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014) (quotation omitted). The "objective (albeit fact-specific) question [is] whether a reasonable officer could have believed [his conduct to] be lawful, in light

of clearly established law and the information [he] possessed. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

To defeat Special Agent Billiot's qualified immunity defense, the estate would need to point to case law showing that it was clearly established in June 2018 that an officer violates the Fourth Amendment by using deadly force against a suspect who drives his car toward the officer attempting to arrest him, after having previously fled police at remarkably excessive speeds. No case law supports that proposition. Indeed, the case law supports the proposition that it is *lawful* to use force in that circumstance. *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014) (reversing denial of summary judgment for officers who shot at fleeing suspect to end car chase); *Marion v. City of Corydon, Ind.*, 559 F.3d 700, 705-06 (7th Cir. 2009) (qualified immunity for officer who shot plaintiff who had crashed car into highway median after car chase, because reasonable officer "would have concluded that, absent police intervention," plaintiff "had the capability to run over officers and/or reach the eastbound lanes of the highway" and hit "one or more bystander's vehicles"); *Scott v. Edinburg*, 346 F.3d 752, 758-61 (7th Cir. 2003) (affirming summary judgment for defendants where officer shot at fleeing suspect who had put others in vicinity at risk through dangerous driving).

Another way to formulate the qualified immunity inquiry is to ask whether an officer in Billiot's shoes would have known that shooting at a drug suspect who was trying to run him over (after already having fled from police at dangerous speeds) violated clearly established law. Here, likely *no* reasonable officer would have considered it a Fourth Amendment violation for Billiot to fire his gun at Tousis when Tousis drove his SUV at him. That would be true even if Tousis had driven in a *different* direction in response to Billiot's commands: having already fled police at over 114 miles per hour, Tousis posed a threat to *anyone* who was driving or walking in the area.

*Plumhoff*, 572 U.S. at 776-77 (qualified immunity for officer who fired *15 shots* at plaintiff where "all that a reasonable police officer could have concluded was that [plaintiff] was intent on resuming his flight and that, if he were allowed to do so, he would once again pose a deadly threat for others on the road"); *Brousseau v. Haugen*, 543 U.S. 194, *199-200 (2004) (finding no clearly established right where officer shoots fleeing suspect who poses risk to others); *Gysan v. Francisko*, 2019 U.S. Dist. LEXIS 23805 (N.D. Ill. Feb. 14, 2019) (qualified immunity for officer who shot plaintiff where plaintiff fled traffic stop by turning into oncoming traffic and slammed into officer's squad car because a reasonable officer could believe plaintiff "was continuing to attempt to escape and that innocent bystanders (namely the individuals traveling down the interstate) could be injured").

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015), and it protects Billiot here. The evidence precludes a finding in this case that Special Agent Billiot incompetently or knowingly violated any law. Billiot is entitled to summary judgment for this reason as well.

### III.  Special Factors

Because the estate's claim so clearly fails for the reasons above, for the purposes of this motion Special Agent Billiot has assumed the existence of a possible *Bivens* remedy. But implied remedies under *Bivens* are "disfavored," and in most instances Congress, not the courts, should decide whether a remedy is appropriate. *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1857 (2017); *see also Hernandez v. Mesa*, 140 S.Ct. 735, 743 (2020) (no extension of *Bivens* to fatal cross-border shooting by border patrol agent). If the court were to deny summary judgment, before allowing this case to proceed to trial the court would first need to assess: (1) whether the claim falls into one of the three categories of existing *Bivens* actions; and (2) if not, whether "special factors" counsel

in favor of recognizing a new *Bivens* action. *See, e.g.*, *Oliva v. Niyar*, 973 F.3d 438, 442-43 (5th Cir. 2020) (answering both answers in the negative in excessive force case); *Byrd v. Lamb*, 990 F.3d 879, 882 (5th Cir. 2021) (same, reversing district court even though agent "did not even raise the *Bivens* issue in the district court"), *petition for cert. filed* No. 21-184 (Aug. 10, 2021).

Additional briefing on this topic can be provided if the court deems it necessary, but one example of a special factor that might counsel against extending *Bivens* in this context may suffice for now. The Supreme Court is currently considering whether the possibility of recovery under the Federal Tort Claims Act precludes a claim for excessive force under *Bivens*. *See* Br. of the United States as Amicus Curiae, *Egbert v. Boule*, No. 21-147, 2021 WL 6144118 (U.S.), *33 (arguing that the FTCA offers "yet more assurance that an implied damages remedy is not necessary to prevent [federal] agents from persistent uses of unnecessary force"). Here, the estate had the option of filing a tort claim against the United States under the FTCA and elected not to do so. Dkt. 32 at 2.

## Conclusion

For the above reasons, Special Agent Billiot's motion for summary judgment should be granted.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Alex Hartzler
ALEX HARTZLER
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-1390
alex.hartzler@usdoj.gov