**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ALEIA TOUSIS, as Special Administrator of the Estate of GUS TOUSIS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SPECIAL AGENT KEITH BILLIOT, )<br>)<br>Defendant. ) | No. 20 C 3012<br><br>Judge Coleman<br><br>Magistrate Judge Cox |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Introduction & Background**

Defendant, retired DEA Agent Keith Billiot ("Defendant Billiot") used excessive deadly force on Gus Tousis in his attempt to apprehend Tousis. Tousis did not pose a threat at the time, as he was sitting in his vehicle in traffic at a red light. Defendant Billiot, in broad daylight, cut Tousis off, engaged his lights and sirens, exited his vehicle and threatened Tousis with his weapon. Defendant Billiot placed himself in the path of Tousis's vehicle, a danger he created and was admittedly aware of, yet still chose a course of action that placed his life at risk, and fired one shot—killing Gus Tousis—said actions being excessive and unreasonable.

Defendant Billiot moves for summary judgment, which should be denied because there are materially disputed facts in evidence when viewed in the light most favorable to Plaintiff. Defendant Billiot unreasonably created a physically threatening situation in the midst of a Fourth Amendment seizure, for which his deadly force cannot be immunized. No reasonable officer could think that the Fourth Amendment allows them to use deadly force on an unarmed man who is committing no violence and running away from officers, even if he is a suspected felon.

1

## **Standard of Review**

Summary judgment may only be granted when no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. If after reviewing the record, the court finds that a genuine issue of material fact exists, summary judgment is improper. *See Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).

At the summary judgment stage, the nonmovant does not need to establish, show, or prove anything but must merely demonstrate that genuine issue of material fact exists. *Sabol v. Walter Payton College Preparatory High Sch.*, 804 F. Supp. 2d 747 (N.D. Ill. 2011). In ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson* v. *Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). Thus, any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Id.* The court should only grant summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).

## **Argument**

It is wholly inappropriate for Defendant Billiot to move for summary judgment based on the critical facts in dispute and considering the caselaw supporting Plaintiff's position. Defendant's version of facts and sequence of events are themselves contradictory and do not support the granting of summary judgment.

In excessive-force cases where the victim of law enforcement's force died, as is the case here, the Seventh Circuit cautions against summary judgment. *Cyrus v. Town of Mukwonago*,

624 F.3d 856, 862 (7th Cir. 2010). The evidence in these cases is typically open to different interpretations, and the plaintiff faces a special challenge because "the witness most likely to contradict the officer's testimony—the victim—cannot testify." *Holmes v. Hernandez*, 2021 U.S. Dist. LEXIS 177401 at *25-26. In situations where the witness most likely to contradict the officer, the suspect himself, is dead, the court is to examine all of the evidence to determine if the officer's story is consistent. *Maravilla v. United States*, 60 F.3d 1230, 1233-34 (7th Cir. 1995) (citing *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).

Here, there are several critical, disputed facts, such as: the manner in which Defendant Billiot attempted to seize Tousis, whether Tousis's vehicle reversed, the direction in which Tousis's vehicle drove, Defendant Billot's physical position in the moments leading up to and during the alleged striking of the vehicle, the timing of the shot, and whether Defendant Billiot was struck by the vehicle. These disputed facts are determinative in ascertaining whether Defendant Billiot's belief—that he was in imminent harm—was reasonable when he shot Tousis.

I. **Defendant Billiot's use of deadly force was unreasonable, excessive, and unconstitutional at the time and under the circumstances of his seizure and shooting of Gus Tousis.**

Whether the force used by police officers complies with the Fourth Amendment turns on whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Graham v. Connor*, 490 U.S. 386, 397 (1989). The fact-specific nature of whether an officer used excessive force depends on the totality of the circumstances surrounding the encounter. *See Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 592 (7th Cir. 1997).

Courts must pay careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to

3

safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). In evaluating the constitutionality of officer conduct, the court must "carve up the incident into segments and judge each on its own terms to see if the officer[s] w[ere] reasonable at each stage." *Deering v. Reich*, 183 F.3d 645, 652 (7th Cir. 1999).

Defendant argues that Tousis's flight from an attempted arrest at high speeds is sufficiently serious to justify the use of force. The problem with this contention is that Tousis was not driving at a high rate of speed (Plaintiff's SOF ¶¶ 21, 27) and there was no active, sustained police pursuit at the time Defendant Billiot shot and killed Tousis (Plaintiff's SOF ¶¶ 20, 25, 27). In fact, Tousis was stopped in traffic with a red light and two vehicles ahead of him when Defendant Billiot attempted to seize Tousis by cutting in front of his vehicle. DSOF ¶ 35; Plaintiff's SOF ¶ 74. It was unreasonable for Defendant Billiot to attempt to seize Gus Tousis at the time under these circumstances, sitting in traffic without having committed a violation, let alone threaten Tousis with deadly force.

Defendant argues that Tousis posed a fatal threat to Defendant Billiot, but the facts do not support this contention. A police officer may use deadly force only to seize a fleeing felon who has committed a violent crime or who presents an immediate danger to the officer or others. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). It is not alleged that Tousis committed a crime other than possessing a controlled substance (DSOF ¶ 68), which was unconfirmed at the time, much less a violent crime. Defendant Billiot had no knowledge that Tousis carried a weapon or had ever been arrested for unlawful use or possession of a weapon. Plaintiff's SOF ¶ 80.

Defendant argues that Tousis's utilization of his vehicle as a deadly weapon constitutes an immediate danger, but the facts do not indicate he intended to strike Defendant Billiot, used

4

the vehicle in any way other than to escape, nor is there evidence that the vehicle actually struck Defendant Billiot. It is disputed whether Tousis reversed his vehicle (Plaintiff's SOF ¶ 41), or whether it came to an abrupt stop (Plaintiff's SOF ¶ 45). These facts cannot conclusively demonstrate Tousis's intent. Special Agent Boehnke testified that he assumed Tousis had reversed so Tousis could back up to get around Defendant Billiot (Plaintiff's SOF ¶ 78), not so that he could strike Defendant Billiot. Aleia Tousis testified that she believes her father, Gus, was not trying to hurt Defendant Billiot because Gus is not an aggressive or violent person. Plaintiff's SOF ¶ 85. The Seventh Circuit has emphasized that someone does not pose "an immediate threat of serious harm" solely because he is armed. *Estate of Biegert v. Molitor*, 968 F.3d 693, 700 (7th Cir. 2020).

The direction in which Tousis's vehicle moved cannot be conclusively determined, so the court cannot assume Tousis's intent, or whether Defendant Billiot's fear was reasonable. Defendant argues that Tousis drove directly straight toward Defendant Billiot, but the record demonstrates that Tousis was actually turning right to avoid Defendant Billiot. Comparing the location where the bullet struck the steering wheel to where the bullet struck the windshield, the positioning indicates that Tousis was turning his wheel to the right, maneuvering his vehicle away from Billiot, and Billiot was angled to the driver side of the front end of Tousis's vehicle. Plaintiff's SOF ¶ 56. Further, Tousis's vehicle veered to the right, the right-hand lane was clear of traffic, and Tousis's vehicle entered the righthand lane. Plaintiff's SOF ¶ 48.

The fact that Defendant Billiot was not struck by Tousis's vehicle makes it less likely that he was in fear of his life, because he was not at risk of harm. Gus Tousis's vehicle did not strike Defendant Billiot. Plaintiff's SOF ¶ 50, 51. There is no damage to the front of Tousis's vehicle where it allegedly struck Defendant Billiot, further supporting the fact that no collision occurred.

5

Plaintiff's SOF ¶ 50. There is no allegation of injury to Defendant Billiot's chest, torso, or waist, but only to his back <u>from striking it on the curb</u>. *Id*. His complaints of pain were that of his back, not his chest, torso, or waist. *Id*.

Rather than fall to the ground after being allegedly struck, Defendant Billiot backpedaled toward the median (Plaintiff's SOF ¶ 52), but an impact of such claimed magnitude is likely to throw a person off their feet. Billiot did not ride in an ambulance to the hospital. Plaintiff's SOF ¶ 50. His injuries were not severe enough to be admitted, as he was treated and released that same day. *Id*. After the shooting, Defendant Billiot told Boehnke "I had to," but not "he [Tousis] hit me." Plaintiff's SOF ¶ 64.

The statement made by Detective Braun that Defendant Billiot "had injuries consistent with being struck by a vehicle" is hearsay and should be deemed inadmissible. Plaintiff's SOF ¶ 67. The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc*., 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). That statement came from CPD Detective James Braun's report, which itself came from Detective Patrick Loftus's spoken statement to Detective Braun, which itself came from an unidentified doctor. *Id*. This statement is medical opinion and should be discounted because it did not come from a medical expert or medical report. Detective Braun never received Defendant Billiot's medical records. *Id*. Defendant Billiot had spinal surgery approximately two-and-a-half months prior to the shooting, which could have been aggravated by the fall where he struck his back on the curb of the median. *Id*.

The two-ton "weapon" that Tousis used to threaten Defendant Billiot's life likely would have caused more significant injuries than those alleged if it actually struck Defendant Billiot.

6

There is no evidence to support the claim that Defendant Billiot was struck in the chest. Common sense suggests that no allegation of injury to his chest, without medical evidence to buttress the claim, demonstrates the fact that Defendant Billiot was not struck by the vehicle.

The Supreme Court has held that the use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is unconstitutionally unreasonable. *Garner*, 471 U.S. at 11. Defendant Billiot's use of deadly force is unconstitutionally unreasonable under the facts presented. The manner and method in which Defendant Billiot attempted to seize Gus Tousis, which resulted in his death, must be considered.

Defendant Billiot seized Tousis with a sudden and dramatic show of force. While Tousis was stopped in traffic at a red light with two vehicles ahead of him (DSOF ¶ 35; Plaintiff's SOF ¶ 74), Defendant Billiot cut Tousis off (Plaintiff's SOF ¶ 39) by pulling in front of Tousis's vehicle as he engaged his lights and sirens (DSOF ¶ 38). Defendant Billiot cut in front of Tousis's vehicle at a northwestern angle, positioning his driver's side door directly in front of Tousis's vehicle. Plaintiff's SOF ¶ 38. Defendant Billiot testified that his driver side door was close enough to Tousis's vehicle that Defendant Billiot felt concerned that if he exited his vehicle at the time he stopped in front of Tousis's vehicle, that he would be in great danger because of the risk of being struck by Tousis's vehicle. Plaintiff's SOF ¶ 76. Defendant Billiot testified that he did not immediately exit his vehicle because he did not want to risk being struck by Tousis's vehicle. Plaintiff's SOF ¶ 75.

Defendant Billiot understood the risk he took by placing himself in the path of Tousis's vehicle, positioning his vehicle in front of Tousis's vehicle with his driver side door directly in front of Tousis's vehicle (Plaintiff's SOF ¶ 49), and his DEA-issued vehicle located directly behind him (Plaintiff's SOF ¶ 79). He exited his vehicle toting his carbine rifle (Plaintiff's SOF

7

¶¶ 40, 49) and pointed it at Gus Tousis (Plaintiff's SOF ¶ 43). Defendant Billiot's carbine rifle had one bullet in the chamber. Plaintiff's SOF ¶ 11.

As soon as Tousis's vehicle pulled forward, Defendant Billiot testified that he fired his weapon. Plaintiff's SOF ¶ 53. The distance between Defendant Billiot and Tousis at the time of the shooting is in dispute, as Defendant Billiot pulled his vehicle in front of Tousis's vehicle with his driver side door nearest the front of Tousis's vehicle. Plaintiff's SOF ¶ 38. There was an estimated distance between Defendant Billiot and Tousis of at least 10 feet and at most 25 feet away from each other when Defendant Billiot exited his vehicle, and Defendant Billiot ran as fast as he could directly toward Tousis's vehicle (Plaintiff's SOF ¶¶ 44, 49), shortening the distance between them. Plaintiff's SOF ¶ 53.

Despite his admitted concern for the danger he was placing himself in, Defendant Billiot ran as fast as he could toward Tousis's vehicle, more toward the driver side (Plaintiff's SOF ¶ 51), with nothing between his person and Tousis's vehicle. Plaintiff's SOF ¶¶ 44, 49. He claims he had no time to get out of the way, but he had time to run as fast as he could directly toward a vehicle he knew had the capability of striking him. Plaintiff's SOF ¶ 44. Defendant Billiot knew he would be struck (Plaintiff's SOF ¶ 44), but still acted in such a way that placed him in danger.

Plaintiff's version of events is supported by Special Agent Boehnke's statement and testimony. Boehnke related that as he was pulling up behind the target vehicle [Tousis] he heard a single gunshot *and then* observed Agent Billiot fall to the ground." Plaintiff's SOF ¶ 74. Boehnke "related *he then* observed the target vehicle accelerate quickly and veer off to the right before striking a street light and coming to a stop." (emphasis added) *Id*. Special Agent Boehnke stated that the summary of his interview by Detective Braun was accurate in the description of the incident. Plaintiff's SOF ¶ 73. This version runs contrary to Defendant Billiot's version.

8

The timing of the shot (Plaintiff's SOF ¶ 53), distance between Defendant Billiot and Tousis (Plaintiff's SOF ¶ 53), whether Defendant Billiot was struck (Plaintiff's SOF ¶¶50-51), and the positioning of Defendant Billiot and Tousis (Plaintiff's SOF ¶ 44, 49, 56) are in dispute to the extent that that it cannot be conclusively determined that Defendant Billiot's life was in danger. Plaintiff's SOF ¶ 54. By placing himself in the path of a vehicle and running directly toward it, Defendant Billiot unreasonably created a physically threatening situation in the midst of a Fourth Amendment seizure, for which his deadly force cannot be immunized. *Estate of Starks v. Enyart*, 5 F.3d 230, 233 (7th Cir. 1993). Officers who unreasonably create the encounter that ostensibly permit the use of deadly force to protect themselves cannot be immunized. *Id*. at 234.

As the Supreme Court explained in *Garner*, no seizure is more intrusive than one effected by deadly force. 471 U.S. at 9. Sometimes officers must let felony suspects escape rather than resort to deadly force. *Id.* at 11. It is not better that all felony suspects die than that they escape. *Id*. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. *Id*. To determine whether the force used to effect a particular seizure is reasonable, we balance the nature and quality of the intrusion on the individual's rights against the "countervailing governmental interests at stake." *Graham*, 490 U.S. at 395.

Defendant Billiot attempts to paint Gus Tousis as a threatening individual driving menacingly to justify his deadly use of force. Defendant Billiot claimed he intended to end the alleged threat because he was concerned that Tousis posed a threat to Boehnke and other civilians. Defendant Billiot stated, "I made the decision hey, let's try to stop him now." DSOF ¶ 36. However, an officer's good intentions do not make an objectively unreasonable use of force

9

constitutional. *Graham*, 490 U.S. at 397 (*citing United States v. Robinson*, 414 U.S. 218 (1973)). The reasonableness inquiry is objective, and the officer's subjective belief or motivations are irrelevant. *Id*.

Defendant argues that he was concerned for the safety of Special Agent Boehnke when Tousis allegedly reversed. However, Boehnke was not in a position to feel threatened by Tousis's vehicle. Boehnke testified that he was still driving and some distance back from Tousis and Defendant Billiot's vehicles and was over a hundred yards away when Defendant Billiot pulled his vehicle in front of Tousis's vehicle. Plaintiff's SOF ¶ 42.

To support his claim that the threat of harm was sufficiently serious, Defendant Billiot cites a sentencing report in which a DEA agent was struck by a motor vehicle. DSOF ¶ 72. However, this report is not part of the record and should be deemed inadmissible as irrelevant, immaterial, and prejudicial to Plaintiff. Plaintiff's SOF ¶ 72. This fact, even if true, does not offer any probative value to the issue or facts of this case.

If anyone was menacing in this deadly encounter, it was the shooting officer, Defendant Billiot. Defendant Billiot exited his vehicle with his carbine rife drawn because he feared risk to civilians by Tousis, but there was no active police chase (Plaintiff's SOF ¶¶ 20, 25, 27), no high rate of speed (Plaintiff's SOF ¶¶ 21, 27), or threat to civilians at the time Defendant Billiot cut in front of Tousis's vehicle (Plaintiff's SOF ¶¶ 38-40). Plaintiff's SOF ¶ 77.

Whether Tousis intended to drive forward on his own volition or did so prior to being shot is disputed. Special Agent Boehnke related that he heard a single gunshot *and then* observed the vehicle accelerate quickly. Plaintiff's SOF ¶ 74. Boehnke saw Tousis slumped down and bleeding from the neck as he approached Tousis's vehicle. DSOF ¶ 61. It is possible, and more than likely, that Gus Tousis was dead or incapacitated when his vehicle moved forward. The

10

threat of danger presented by the fleeing felon must be willful in order to warrant the use of deadly force in response. *Starks*, 5 F.3d at 234. There is no evidence that this act was willful. Regarding the reasonableness of lethal force as a response to vehicular flight, the Supreme Court observed that this is an area "in which the result depends very much on the facts of each case" *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004).

      Defendant argues that DEA policy allows an agent to fire at a person driving a moving vehicle to justify Billiot's unreasonable use of deadly force. DSOF ¶ 71. However, an agent can only do so if the vehicle "poses an imminent threat of death or seriously physical injury to the officer or another person," which was not the case here. Plaintiff's SOF ¶ 71. Policies and procedures do not shed light on the reasonableness of an officer's behavior because, "even if they could be practicably assessed by a judge, [such policies] vary from place to place and from time to time," and so "[w]e cannot accept that the search and seizure protections of the Fourth Amendment are so variable." *Whren v. United States*, 517 U.S. 806, 815 (1996). The court should give no weight to the argument that Defendant Billiot did not violate DEA policy.

      Defendant Billiot acted with impunity and now hopes to escape liability for his excessive use of unjustifiable deadly force. Defendant Billiot claims he provided medical attention to Tousis. However, Billiot testified that he did not run toward Tousis's vehicle after it crashed, nor did he have anything to do with the extrication process. Plaintiff's SOF ¶ 81. Defendant Billiot does not believe he caused the death of Gus Tousis. Plaintiff's SOF ¶ 82. This is ultimately a question of fact for the jury's determination. Defendant Billiot was scheduled for pre-approved leave to start the Monday following the shooting. Plaintiff's SOF ¶ 83. Aleia Tousis filed this lawsuit because she seeks justice for her father's unjustifiable killing. Plaintiff's SOF ¶ 84. The intrusiveness of a seizure by means of deadly force is unmatched. *Garner*, 471 U.S. at 9. The

11

suspect's fundamental interest of his own life need not be elaborated upon. *Id*. The use of deadly force also frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment. *Id*.

### II. Defendant Billiot is not entitled to qualified immunity because he violated Gus Tousis's clearly established rights and Plaintiff can point to a clearly analogous case.

Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Disputes of material fact may preclude qualified immunity, when reading the facts in the light most favorable to the plaintiff leads to the conclusion that a reasonable jury could find that the defendant violated a clearly established right. *Holmes*, 2021 U.S. Dist. LEXIS 177401 at *24.

Under qualified immunity, government officials are shielded from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Zimmerman v. Doran*, 807 F.3d 178 (7th Cir. 2015). To defeat qualified immunity, a plaintiff must establish both that (1) the defendant violated a constitutional right and (2) the right was "clearly established," *Pearson*, 555 U.S. at 232, both "at the time and under the circumstances presented," *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016).

Previous Supreme Court cases clearly establish that a suspect fleeing in a car that has not posed a danger to anyone has a clearly established right not to be seized with deadly force. *See Graham*, 490 U.S. 386; *Garner*, 471 U.S. 1. A plaintiff can show that a right is clearly established in one of two ways. *See Wheeler v. Lawson*, 539 F.3d 629 (7th Cir. 2008). First, the

12

plaintiff can point to a clearly analogous case that establishes the right to be from the specific conduct at issue, and second, the plaintiff can show that the conduct in question is so egregious that no reasonable person could believe that it was constitutionally permissible. *Id*.

Plaintiff can point to a clearly analogous case, that of *Estate of Starks v. Enyart*, 5 F.3d 230 (7th Cir. 1993). In *Starks*, the court of appeals denied qualified immunity because the officer created the need for deadly force by unreasonably stepping in front of a driver who had just began to flee his car; officer created the situation that caused the officer to fear for his own or others' safety. *See generally*, *Starks*, 5 F.3d 230.

The key dispute in *Starks* was whether the defendant officer stepped in front of the decedent's rapidly moving cab. If the defendant officer did so, he would have unreasonably created the encounter that ostensibly permitted the use of deadly force to protect him, because the decedent would have been unable to react in order to avoid presenting a deadly threat. *Starks*, 5 F.3d at 234. This key dispute in *Starks* that summary judgment was denied upon tracks the key factual dispute at issue in this case—whether Defendant Billiot's unreasonable action of positioning himself in front of Tousis's vehicle prompted the danger he faced.

*Starks* does not say that officers who use aggressive police tactics cannot use deadly force if it becomes necessary. *Estate of Brown v. Thomas*, 2014 U.S. Dist. LEXIS 34459 at *7 (E.D. Wis. 2014). It merely says that police cannot escape liability if their actions turn a nonviolent fleeing suspect into a violent threat to life and limb. *Id*.

*Estate of Starks v. Enyart* highlights how concrete the threat of danger from the fleeing felon must be to justify the use of deadly force. *Holmes*, 2021 U.S. Dist. LEXIS 177401 at *45. In *Starks*, the Seventh Circuit concluded that if the officer jumped in front of the car, then Starks was not intentionally putting that officer in danger, and the use of deadly force against him was

13

unwarranted. *Id*. at *45. This conclusion is particularly striking because the decedent was fleeing in a stolen car. *Id*. at *45-46.

Fleeing felons who have not resorted to violence are accorded less intrusive seizures. *Starks*, 5 F.3d at 234. If a fleeing felon is converted to a "threatening" fleeing felon solely based on the actions of a police officer, the police should not increase the degree of intrusiveness. *Id*. In other words, we have no countervailing governmental interest in unreasonable police conduct that would justify a greater intrusion on the individual's rights. *Id*.

In the case of *Scott v. Edinburg*, the Seventh Circuit held that summary judgment was inappropriate because there was a genuine issue of fact regarding whether the officer fired his weapon when the car was backing toward him, standing still, or moving away from him. 346 F.3d 752 (7th Cir. 2003). In this case, the movement of Tousis's vehicle and the position of Defendant Billiot when he fired his weapon are in such dispute that summary judgment should be denied. As the court noted, "[i]f the fatal shot was fired while Mr. Scott was driving away, then the argument that Officer Edinburg was compelled to fire in order to protect himself would be significantly weakened." *Id*. at 757-58.

Although it is not necessary that a prior case address the precise factual situation confronting the officer, the unlawfulness of the officer's action should be clear in light of pre-existing law. *Rice v. Burks*, No. 92-2513 (7th Cir. July 26, 1993); *McDonald v. Haskins*, 966 F.2d 292 (7th Cir. 1992). This requirement does not mean that a plaintiff must be able to point to a case "on all fours" with the defendant officer's misconduct. *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2007); *see Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Defendant will argue that the facts of this case are different than those of *Starks* and *Scott*, but the facts viewed in light most favorable to plaintiff support Plaintiff's version of events—that Defendant Billiot positioned

14

himself in front of Tousis's vehicle, creating the danger that ostensibly justified his use of force. Courts have consistently denied summary judgment on these facts.

## Conclusion

Plaintiff has demonstrated that genuine issues of material fact exist, such that summary judgment against Defendant Billiot is improper. Summary judgment on the excessive force claim is improper because Plaintiff can show that Defendant Billiot's use of deadly force was unreasonable, excessive, and unconstitutional at the time and under the circumstances of his seizure and shooting of Gus Tousis. Summary judgment on the qualified immunity claim is improper because Defendant Billiot violated Gus Tousis's clearly established rights and Plaintiff can point to a clearly analogous case.

The court must consider these facts in the light most favorable to the nonmovant, Plaintiff Aleia Tousis. Plaintiff alleges many facts are in dispute regarding the actions of both Plaintiff and Defendant, so this action should be left for a judge or jury to decide.

WHEREFORE, for the above reasons, Plaintiff, Aleia Tousis, respectfully requests that this Honorable Court deny Defendant's motion for summary judgment and for any further relief the Court deems reasonable and just.

**Respectfully submitted,**

*/s/ Vincenzo B. Caporale*
*One of Plaintiffs' Attorneys*

**Vincenzo B. Caporale #6335651**
**Gregory E. Kulis & Associates, Ltd.**
30 N. LaSalle Street, Suite 2140
Chicago, IL 60602
P. 312.580.1830
E. **gkulis@kulislawltd.com**
E. **vcaporale@kulislawltd.com**

15