UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEIA TOUSIS, as Special Administrator of the Estate of Gus Tousis, | ) ) ) Case No. 20-cv-3012 |
| Plaintiff, | ) ) Judge Sharon Johnson Coleman |
| v. | ) ) |
| SPECIAL AGENT KEITH BILLIOT, | ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Aleia Tousis ("plaintiff"), daughter of decedent Gus Tousis ("Tousis") and special administrator of the estate of Gus Tousis, brought this Fourth Amendment excessive force action against Drug Enforcement Agency ("DEA") Special Agent Keith Billiot based on the agent's use of deadly force on June 2, 2018. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 389, 91 S.Ct. 1999, 29 L.E.2d 619 (1971). Before the Court is defendant's motion for summary judgment brought under Federal Rule of Civil Procedure 56(a). For the following reasons, the Court denies Agent Billiot's motion because there are genuine disputes as to the material facts surrounding his use of deadly force in effecting Tousis' arrest. *See Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010) ("summary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations.").

**Background**

Viewing the evidence and all reasonable inferences in favor of Tousis, as the Court is required to do at summary judgment, the DEA began investigating Tousis as early as December 2017. Agent Billiot was not the lead investigator, but was involved as the supervisory special agent overseeing the DEA investigators in his group. On the morning of Saturday, June 2, 2018, Agent

Billiot's understanding was that Tousis was "involved in drug trafficking," and that Tousis had a "source of supply" named Vernon Turner who lived in the Aurora, Illinois area. Agent Billiot further understood that the investigating agents believed Tousis would travel to Turner's residence to procure drugs that day. Previously, DEA agents had placed a court-authorized tracker on Tousis' Ford SUV that allowed them to know the SUV's location. The DEA agents' plan on June 2 was to observe Tousis procure illegal drugs and then arrest him.

Early on June 2, DEA Task Force Officer Robert Boehnke traveled to Turner's home in an unmarked vehicle and observed Tousis arrive in a silver or gray SUV, enter Turner's garage carrying a bag, and then leave with a bag. Officer Boehnke called out his observations over the DEA agents' radio. The DEA agents then enlisted the DuPage County Sheriff's Department to conduct a traffic stop of Tousis' SUV, but Tousis drove away from Yackley Avenue onto eastbound Interstate 88—sometimes at dangerous speeds. Agent Billiot eventually saw Tousis' SUV on Interstate 290 heading eastbound and followed Tousis off the interstate onto Central Avenue in Chicago.

As Agent Billiot drove northbound on Central Avenue following Tousis, the agent saw that they were approaching a red light with two cars stopped in front of Tousis. At that time, Agent Billiot decided to arrest Tousis and communicated over the radio that he would pull in front of Tousis behind the stopped vehicles. Agent Billiot instructed Officer Boehnke, who was in the vicinity, to come up from behind. Agent Billiot then turned on his lights and siren and pulled in front of Tousis' SUV positioning his driver side door in front of the SUV. He then exited his vehicle wearing a DEA law enforcement vest while grabbing his rifle.

Agent Billiot testified that either before or after he exited his vehicle, Tousis put his SUV into reverse and began to reverse quickly. Officer Boehnke, however, testified that he only saw the SUV's reverse lights on and that he did not observe the vehicle move in reverse. Another eye-witness stated he did not see the SUV drive in reverse. Nonetheless, Agent Billiot testified that he

thought Tousis would harm someone while driving in reverse, including Agent Boehnke. Agent Boehnke, however, testified that he was at least a hundred yards away from the intersection at that time.

Further, Agent Billiot stated at his deposition that he did not immediately aim his rifle at Tousis upon exiting his vehicle, although his own testimony given later at the same deposition, viewed in plaintiff's favor, contradicts this testimony. In addition, Agent Billiot testified that after he stopped his car and raised his rifle while standing in front of the SUV, he shouted commands at Tousis. The SUV then veered to the right of Agent Billiot and stopped. Agent Billiot testified that he shot at Tousis when the SUV pulled forward. He also testified that the SUV hit him, although other evidence suggests that Agent Billiot fell to the ground after backpedaling toward the median in the middle of Central Avenue. Indeed, another eyewitness stated that he did not see the SUV hit the agent. After Tousis was shot, the SUV moved to the right, crashed into a street pole, and then stopped at the curb. Tousis was taken to Loyola Medical Center where he was pronounced dead.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). When determining whether a genuine dispute as to any material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Anderson v. Nations Lending Corp.,* 27 F.4th 1300, 1304 (7th Cir. 2022). After "a properly supported motion for summary judgment is made, the adverse party 'must

3

set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (citation omitted).

**Discussion**

*Fourth Amendment Excessive Force Claim*

"The Fourth Amendment protects individuals from law enforcement officers' unreasonable use of deadly force in effecting an arrest." *Siler v. City of Kenosha*, 957 F.3d 751, 758 (7th Cir. 2020). In determining whether the use of force is permissible under the objective reasonableness standard, "the court must assess the totality of the circumstances from the perspective of a reasonable officer on the scene." *Bayon v. Berkebile*, 29 F.4th 850, 854 (7th Cir. 2022) (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). "[T]he very nature of this task often makes summary judgment in these cases inappropriate." *Bayon*, 29 F.4th at 854. This is especially true in deadly force cases because "given the impossibility of victim testimony to rebut the officers' account, [courts] scrutinize all the evidence to determine whether the officers' story is consistent with other known facts." *King v. Hendricks County Comm'r*, 954 F.3d 981, 985 (7th Cir. 2020); *see also Cyrus,* 624 F.3d at 862.

In his motion, Agent Billiot argues that his use of deadly force was reasonable under the circumstances because Tousis put the agent and others in imminent danger by using his SUV as a weapon. *See Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *Gysan v. Francisko*, 965 F.3d 567, 570 (7th Cir. 2020). Keeping in mind that the Court must scrutinize the evidence to make sure Agent Billiot's story is consistent with all of the known facts, he has failed to show that there are no genuine issues of material fact and that his use of deadly force was reasonable as a matter of law.

The evidence, viewed in Tousis' favor, shows that Tousis was stopped in traffic at a red light with two vehicles stopped ahead of him, after which Agent Billiot pulled his vehicle in front of

Tousis' SUV. Agent Billiot argues that Tousis utilized his SUV as a deadly weapon when he put the car in reverse and attempted to hurt someone, but other evidence contradicts Agent Billiot's testimony that Tousis drove the car in reverse or that anyone was behind Tousis' SUV at that time. Furthermore, Agent Billiot testified that Tousis hit him while driving the SUV forward, but other evidence shows that there was no damage to the front of Tousis' vehicle indicating that Agent Billiot was hit. *King*, 954 F.3d at 985 ("If physical evidence contradicts the [agent's] testimony, summary judgment is likely inappropriate."). Also, evidence suggests that Agent Billiot may have fallen to the ground after backpedaling toward the median in the middle of Central Avenue, rather than the SUV hitting him.

Meanwhile, in support of his summary judgment motion, Agent Billiot presents evidence concerning his subjective intent, which is not relevant to an excessive force claim. *See Burton v. City of Zion*, 901 F.3d 772, 780 (7th Cir. 2018). For example, Agent Billiot testified that he fired his rifle at Tousis because he believed it was his only chance of staying alive. If the jury does not believe Agent Billiot's version of the events, namely, that Tousis was driving toward him and hit him, the agent's argument that he was compelled to fire his rifle to protect himself is significantly weakened. *See Scott v. Edinburg,* 346 F.3d 752, 757-58 (7th Cir. 2003).

Also, many of Agent Billiot's arguments are speculative, including that Tousis was resisting arrest because he knew he would face a long prison term if he were caught with the cocaine he was transporting—but speculation is not evidence. *Boss v. Castro*, 816 F.3d 910, 919 (7th Cir. 2016). Likewise, Agent Billiot's arguments concerning Tousis' conduct that occurred before his arrest, including that he drove at dangerous speeds to avoid being arrested in DuPage County, does not change the Court's excessive force analysis because the relevant inquiry is what happened at the time of the arrest when Tousis was on Central Avenue in Chicago. *Gupta v. Melloh*, 19 F.4th 990, 996 (7th Cir. 2021). Simply put, although there is evidence that Tousis was driving at dangerous speeds in

DuPage County, there is no evidence that Tousis was speeding at the time Agent Billiot attempt to arrest him in Chicago.

Construing the evidence and all reasonable inferences in Tousis' favor, plaintiff has set forth sufficient evidence that Agent Billiot's use of deadly force was unreasonable because Tousis was not evading arrest at the time nor did he pose an immediate threat to the agent or others when he maneuvered his car to the right of the agent or when he allegedly drove in reverse. *See Bayon*, 29 F.4th at 854.

*Qualified Immunity*

Next, Agent Billiot asserts that he is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages in situations in which their conduct does not violate a clearly established statutory or constitutional right." *Gupta v. Melloh*, 19 F.4th 990, 1000 (7th Cir. 2021). Plaintiff must make two showings to overcome Agent Billiot's assertion of qualified immunity: (1) she must demonstrate that the facts, viewed in Tousis' favor, establish a constitutional violation; and (2) she must show Agent Billiot's conduct violated a "clearly established statutory or constitutional rights of which a reasonable person would have known." *Gaddis v. DeMattei,* 30 F.4th 625, 632 (7th Cir. 2022) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

Agent Billiot's qualified immunity argument is based on his version on the facts, not the facts viewed in Tousis' favor. As stated above, construed in Tousis' favor, plaintiff has established a Fourth Amendment excessive force violation. Thus, the Court turns to whether Agent Billiot's conduct violated a clearly established constitutional right. The Court's inquiry into whether an officer's conduct clearly violates established law is undertaken in light of the specific facts and context of a case, not mere generalities. *See Gaddis*, 30 F.4th at 632. A constitutional right is clearly established when "a reasonable official would understand that what he is doing violates the right."

6

*Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). To make this showing, plaintiff must identify a closely analogous, not necessarily identical, case identifying the right. *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019). "The dispositive question 'is whether the violative nature of *particular* conduct is clearly established.'" *Id.* (citation omitted, emphasis in original).

In response to Agent Billiot's qualified immunity argument, plaintiff identifies *Estate of Starks v. Enyart*, 5 F.3d 230 (7th Cir. 1993), as a closely analogous case. In *Starks*, three police officers shot and killed a suspect who had stolen a taxicab. Prior to being shot, the suspect was parked and the officers ordered him to exit the taxicab. Instead of exiting the taxicab, the suspect put the vehicle in reverse, turned the wheels, drove forward, and pulled to the side. *Id.* at 233. The officers nonetheless shot the suspect. *Id.* The Seventh Circuit concluded that based on the decedent's version of the facts, his attempt to maneuver the taxicab was not so reckless that the officers could reasonably fear for their safety or the safety of others. *Id.* The Seventh Circuit noted that the factual dispute of whether one of the officers stepped in front of the taxicab prior to shooting the suspect was important because had the officer stepped in front of the vehicle when it was moving, the officer "would have unreasonably created the encounter that ostensibly permitted the use of deadly force to protect him." *Id.* at 234. Under the specific facts and context of the present case, *Starks* is clearly established precedent showing that Agent Billiot would understand what he did violated Tousis' constitutional rights. Also, the disputes of material facts in this case preclude qualified immunity because a reasonable jury could find that Agent Billiot violated a clearly established right.

Agent Billiot contends that *Starks* is distinguishable because Tousis' was driving at ridiculously dangerous speeds to evade arrest, but as discussed, Tousis' dangerous driving occurred before Agent Billiot attempted to arrest him in Chicago. In fact, evidence in the record indicates

7

that there was no sustained, active police chase when Tousis drove from I-88 and Yackley Avenue in DuPage County to Central Avenue in Chicago, approximately twenty miles away. Meanwhile, no one argues that Tousis was not evading arrest, but evidence in the record shows that at the time of the attempted arrest, Tousis was stopped at a red light off the expressway. Agent Billiot further discusses what certain witnesses in *Starks* saw when the officers shot the suspect, failing to acknowledge that the Seventh Circuit concluded that decedent's version of the facts raised a disputed issue for the factfinder. *Id.* at 234. Otherwise, Agent Billiot's arguments do not establish that the *Starks* decision is not closely analogous to the facts and circumstances of this case. Agent Billiot's qualified immunity argument fails at this juncture.

**Conclusion**

For the foregoing reasons, the Court denies defendant's motion for summary judgment [57]. IT IS SO ORDERED.

Date: 5/12/2022

                                              Entered:

                                              SHARON JOHNSON COLEMAN
                                              United States District Judge